**United States District Court**
**Southern District of Ohio**
**Western Division**

THOMAS A. COVERDALE,

      Plaintiff,

      v.

DAVID C. CONLEY,

      Defendant.

Case No: 1:19-cv-920

McFarland, J.
Bowman, M.J.

**REPORT AND RECOMMENDATION**

Plaintiff, a prisoner who is represented by counsel, filed suit under 42 U.S.C. §1983 against Defendant Nurse Practitioner David Conley.  Plaintiff alleges that Defendant deliberately failed to provide timely medical care in violation of the Eighth Amendment. In lieu of an answer, NP Conley filed a motion to dismiss the complaint for failure to state any claim.  Pursuant to local practice, this case has been referred to the undersigned magistrate judge.  For the reasons that follow, Defendant's motion to dismiss should be DENIED.

**I.      Standard of Review**

Defendant's motion to dismiss has been filed under Rule 12(b)(6), prior to the commencement of any discovery.  In considering the motion, the Court must "construe the complaint in the light most favorable to the nonmoving party, accept the well-pled factual allegations as true, and determine whether the moving party is entitled to judgment as a matter of law." *Commercial Money Ctr., Inc. v. Illinois Union Ins. Co.,* 508 F.3d 327, 336 (6th Cir. 2007).  Under Rule 8, a claim for relief should be "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. Proc. Rule 8(a)(2).

Based upon the liberal pleading standards of Rule 8 and the standard of review, it is far more common for cases to be disposed of on motions for summary judgment, following a period of discovery, than for "failure to state a claim upon which relief can be granted" under Rule 12(b)(6).

Even under the applicable standard of review, however, a court "need not accept the plaintiff's legal conclusions or unwarranted factual inferences as true." *Commercial Money Ctr.*, 408 F.3d at 336. Thus, a motion to dismiss will be granted if a complaint lacks any legal basis for the claims, or if the facts alleged are so conclusory as to be insufficient to state any claim. "The complaint must not only include legal conclusions, but must make factual allegations, which are accepted as true to state a plausible claim for relief." *Smith v. Tipton County Board of Education*, 916 F.3d 548, 552 (6th Cir. 2019); *see also Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555, 127 S. Ct. 1955 (2007) (internal citations omitted). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S.Ct. 1937, 1949 (2009). While such determination rests primarily upon the allegations of the complaint, "matters of public record, orders, items appearing in the record of the case, and exhibits attached to the complaint, also may be taken into account." *Amini v. Oberlin Coll.,* 259 F.3d 493, 502 (6th Cir. 2001) (quoting *Nieman v. NLO, Inc.,* 108 F.3d 1546, 1554 (6th Cir. 1997)) (emphasis omitted).

## II.   Facts Alleged in the Complaint and Accompanying Exhibits

Plaintiff's claim arose at a time when he was incarcerated at the Southern Ohio Correctional Facility ("SOCF"). (*Id.* at ¶4). Defendant Conley was a Nurse Practitioner at

SOCF who allegedly made multiple decisions relevant to Plaintiff's medical treatment. (*Id.* at ¶5). Plaintiff reports a history of medical problems from an umbilical hernia dating to 2011; he alleges that he reported ongoing hernia pain when he was transferred to SOCF in June 2017. (*Id.* at ¶12).

Plaintiff describes a series of actions by Defendant that began with the Defendant failing to look at Plaintiff's hernia when he sought hernia treatment in August 2017. Defendant allegedly told Plaintiff that the Ohio Division of Rehabilitation and Corrections ("ODRC") would not pay for hernia surgery, and refused to refer Plaintiff for any further hernia treatment. (*Id.* at ¶13). Later in August 2017, Plaintiff went to Franklin Medical Center ("FMC") for a consultation about his recurrent anal abscess. During that consultation, Dr. Katz of FMC agreed to perform a hernia surgery before performing surgery for the anal abscess. (*Id.* at ¶14). A different nurse practitioner allegedly "signed off" on that hernia surgery during Plaintiff's temporary transfer to Lebanon Correctional Institute. (*Id.* at ¶15). However, upon learning of the proposed surgery after Plaintiff was returned to SOCF, Defendant Conley told him "hell no" and reiterated that ODRC would not authorize or pay for the surgery. (*Id.* at ¶16).

Around 3:30 p.m. on October 30, 2017, Plaintiff's hernia symptoms worsened and began causing Plaintiff sharp pain. Two correctional officers helped Plaintiff into a wheelchair to transport him to the infirmary. (*Id.* at ¶¶ 17-18). After briefly examining Plaintiff and pushing down hard on the swollen hernia, causing extreme pain, Defendant allegedly announced: "Patient refuses medical treatment. I don't have time for this, I'm outta here. I have a Halloween party to go to." Plaintiff protested that he was not refusing medical treatment but Defendant ignored his protests. Instead of ordering immediate

treatment or continuing the exam, NP Conley ordered Plaintiff to spend the night in the infirmary, told the correctional officers on duty that Plaintiff was just trying to get painkillers and not to worry about him, and left to attend his Halloween party. (*Id.* at ¶¶ 20-21). Plaintiff alleges that he spent the night on the floor of the infirmary without treatment or painkillers, pressing his call button and crying out for help in extreme pain without obtaining any response.

The next morning, Defendant returned and after a one-minute exam, referred Plaintiff to the Ohio State University Medical Center ("OSU") where emergency surgery was performed to treat his strangulated hernia. (*Id.* at ¶25). Not long after that, Plaintiff was readmitted to OSU for a bowel obstruction. (*Id.* at ¶¶ 27-28). Upon his return to SOCF, Plaintiff alleges he was given only Tylenol for pain in violation of OSU discharge orders. On November 13, 2017, Plaintiff alleges that he began vomiting bile, but Defendant refused to enter the cell to examine him, saying "I'm not going in there, it stinks." (*Id.* at ¶30). Defendant subsequently again referred Plaintiff to OSU where Doctors eventually determined that Plaintiff had been suffering from a perforated bowel. Plaintiff alleges that his bowel was perforated on October 30, the night he spent in the infirmary with an untreated strangulated hernia. (*Id.* at ¶ 31).

Plaintiff has experienced continued medical complications and will require further procedures and treatment which he alleges were "ultimately caused by Nurse Practitioner Conley's deliberate delay in medical treatment for the irreducible hernia." (*Id.* at ¶ 34). Plaintiff claims that Defendant acted with deliberate indifference to his serious medical needs in violation of his Eighth Amendment rights. (*Id.* at ¶¶ 48-49). Attached to the complaint are documents that reflect the exhaustion of Plaintiff's administrative remedies.

### III.    Analysis

Section §1983 permits recovery for the deprivation of "any rights, privileges, or immunities secured by the Constitution and laws" by a person acting under color of state law.   42 U.S.C. §1983.   Plaintiff asserts that Defendant violated §1983 because he deprived Plaintiff of rights guaranteed by the Eighth Amendment. (Doc. 1 at ¶49).   More specifically, Plaintiff alleges that Defendant exhibited deliberate indifference to his serious medical needs.   Deliberate indifference exists when a defendant knows of and then disregards a substantial risk of serious harm to a plaintiff's health and safety. *Watkins v. City of Battle Creek*, 273 F.3d 682, 686 (6th Cir. 2001) (citing *Farmer v. Brennan*, 511 U.S. 835, 835-37 (1994)).

Here, Plaintiff has adequately alleged that NP Conley acted with deliberate indifference by failing to provide Plaintiff with adequate and timely medical attention. Viewing the allegations in the light most favorable to Plaintiff, Defendant disregarded substantial risks to Plaintiff's health and safety despite Defendant's clear knowledge of Plaintiff's medical history and presumed knowledge of his strangulated hernia on October 30, 2017.   Plaintiff alleges that on October 30, his hernia symptoms were unusual and extreme, but that Defendant ignored his complaints.   Plaintiff alleges that the hernia was swollen to the size of a softball and that it was irreducible, red, and hard to the touch. "Where the seriousness of a prisoner's needs for medical care is obvious to a lay person, the constitutional violation may arise." *Blackmore v. Kalamazoo County*, 390 F. 3d 890, 899 (6th Cir. 2004).

Construed in Plaintiff's favor, Plaintiff's allegations demonstrate a need for urgent medical care that Defendant deliberately ignored on October 30.   Under *Blackmore*, "[t]he

violation is not premised upon the 'detrimental effect' of the delay, but rather that the delay alone in providing medical care creates a substantial risk of serious harm." *Id.* (holding that genuine issues of material fact precluded the grant of summary judgment on a claim involving a delay of treatment).  A medical professional like Defendant should have recognized the risk of harm that could result from a delay in medical attention.  And in the case presented, Plaintiff further alleges that he suffered actual harm from that delay, including complications, additional surgeries, and illness. (Doc. 1 at ¶¶ 27-34).

According to Plaintiff, Defendant was well aware of Plaintiff's history relating to his umbilical hernia and had the opportunity and necessary expertise to examine the Plaintiff's unusual condition on October 30.  Defendant knew (or should have known) that the symptoms Plaintiff was experiencing were unusually extreme, so much so that he needed assistance and a wheelchair to be transported to the infirmary.  Plaintiff alleges that he verbally objected to Defendant's false contention that Plaintiff was refusing medical care, reinforcing the seriousness of his symptoms.  Whether or not Plaintiff can prove his allegations with admissible evidence after discovery remains to be seen, but on the facts alleged, he has pleaded both the objective and subjective elements of his Eighth Amendment claim.  In short, Plaintiff's Complaint contains sufficient detail to exceed the minimum *Iqbal/Twombly* pleading standards.

Defendant argues that "Plaintiff's attachments to his Complaint establish that there is no *law* to support the claims that he makes."  (Doc. 6 at 3, emphasis added). However, it is well-established that "deliberate indifference to serious medical needs of prisoners constitutes the unnecessary and wanton infliction of pain...proscribed by the Eighth Amendment." *Estelle v. Gamble*, 429 U.S. 97, 104-105 (1976).  Again, construed in the

light most favorable to the Plaintiff, the Complaint clearly alleges that NP Conley exhibited deliberate indifference to Plaintiff's serious medical needs in violation of the Eighth Amendment.

Presumably as an alternative to arguing that there is no law that supports Plaintiff's claims, Defendant questions the factual underpinnings of the Complaint, citing the attached exhibits as proof that Plaintiff was in fact provided with "constant, conservative medical treatment" consistent with constitutional standards. (Doc. 6 at 7). Defendant maintains that Plaintiff's "medical records show that his hernia was reducible until the morning of October 31, 2017, that he has a history of recurrent anal abscess formation with fistula tract development, and that it was the multiple abscesses of his small bowel that resulted in his colostomy, not the alleged eighteen-hour delay in his hernia surgery." (Doc. 6 at 2).

Notwithstanding Defendant's reference to "medical records," no such records are attached to the Complaint. The only exhibits that this Court can consider are the attached administrative grievance forms that prove that Plaintiff fully exhausted his claim as he was required to do under the Prison Litigation Reform Act prior to filing suit. Defendant liberally (and exclusively) cites to a single portion of one of those exhibits: the written denial of Plaintiff's final appeal by the Chief Inspector. In contrast to the allegations in the Complaint, the Chief Inspector's denial of Plaintiff's administrative appeal recounts a nearly continuous course of treatment by various prison officials including alleged "24/7" monitoring of Plaintiff between his infirmary admission on October 30 and his transfer to OSU after the hernia became irreducible – which the Chief Inspector states did not occur until October 31. Relying upon the same administrative response, Defendant argues that

7

he cannot be held liable under the Eighth Amendment because, pursuant to prison policies (again cited by the Chief Inspector), Defendant "had no ability to make the final decision regarding any inmate's need for surgery." (Doc. 6 at 4).

Defendant's motion provides no basis for dismissal of the complaint under Rule 12(b)(6). At this early stage of the proceedings, the Court will not accept a version of events recounted in the denial of an administrative grievance that contradicts the Plaintiff's well-pleaded allegations. Contrary to the Chief Inspector's unsworn statement concerning the authority for "final approval" for surgery, Plaintiff clearly alleges that NP Conley had the ability to transfer Plaintiff more immediately on October 30, and/or to provide other medical care that would have prevented the harm that occurred. Plaintiff's claim is based upon allegations that Defendant deliberately refused to provide that care and instead (repeatedly) exhibited deliberate indifference to Plaintiff's serious medical needs.

Unsurprisingly, the vast majority of cases cited by Defendant arise in the context of summary judgment and not under the standards applicable to Rule 12(b)(6).[1] Because Plaintiff's allegations are facially plausible, his allegations are taken as true at this stage. "[A] well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of those facts is improbable and 'that a recovery is very remote and unlikely.'" *Twombly*, 550 U.S. at 556 (quoting *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974)). Here, Plaintiff is entitled to proceed to discovery.

---

[1]Apart from that critical procedural distinction, two of the unpublished cases from the Third and Eleventh Circuits are factually distinguishable because they did not involve an alleged delay in surgical treatment for a strangulated hernia. *See, e.g., Winslow v. Prison Health Servs.*, 406 Fed. Appx. 671 (3rd Cir. 2011); *Palazon v. Sec'y for Dept. of Corrections*, 361 Fed. Appx. 88, 89-90 (11th Cir. 2010).

**IV.      Conclusion**

For the reasons stated, it is herein **RECOMMENDED** that Defendant's Motion to Dismiss for failure to state a claim (Doc. 6) be **DENIED**.


                                        *s/ Stephanie K. Bowman*
                                        Stephanie K. Bowman
                                        United States Magistrate Judge

**United States District Court**
**Southern District of Ohio**
**Western Division**

THOMAS A. COVERDALE,

    Plaintiff,

Case No: 1:19-cv-920

    v.

McFarland, J.
Bowman, M.J.

DAVID C. CONLEY,

    Defendant.

**NOTICE**

Pursuant to Fed. R. Civ. P. 72(b), any party may serve and file specific, written objections to this Report and Recommendation ("R&R") within FOURTEEN (14) DAYS of the filing date of this R&R.  That period may be extended further by the Court on timely motion by either side for an extension of time.  All objections shall specify the portion(s) of the R&R objected to, and shall be accompanied by a memorandum of law in support of the objections.  A party shall respond to an opponent's objections within FOURTEEN (14) DAYS after being served with a copy of those objections.  Failure to make objections in accordance with this procedure may forfeit rights on appeal.  See *Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).